THE PEOPLE *ex rel.* C. S. Deneen, S̀tate's Attorney,

*v.*

JAMES I. ENNIS *et al.*

*Opinion filed December 20, 1900—Rehearing denied February 7, 1901.*

1. PARKS—*section 1 of the Park act of 1895 construed.* Section 1 of the Park act of 1895, (Laws of 1895, p. 272,) which provides that no park district shall include territory "already included in a park district or in a township whose corporate authorities are authorized by law to levy special taxes or special assessments to maintain a public park," means townships whose corporate authorities were, *prior to the act of 1895,* authorized by law to *improve* parks by special taxation or assessment.

2. SAME—*act of 1895 does not limit townships to one park district.* The Park act of 1895, providing that park districts shall not include territory already included in a park district or in a township whose corporate authorities are authorized by law to levy special taxes or special assessments to maintain a public park, does not prohibit the organization of more than one park district in one township if no part of the proposed districts embraces territory included in a district already organized.

APPEAL from the Circuit Court of Cook county; the Hon. C. G. NEELEY, Judge, presiding.

EDWARD C. AKIN, Attorney General, and CHARLES S. DENEEN, State's Attorney, (PENCE, CARPENTER & HIGH, F. B. DRAPER, and J. H. FITCH, of counsel,) for appellant.

ELMER E. BEACH, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

Upon leave given, the State's attorney of Cook county, for and on behalf of the People, filed an information in the nature of a *quo warranto* in the circuit court of Cook county against the appellees, five persons who claimed to be and assumed to act as commissioners of the North Shore park district, calling upon them to appear in the said court and show by what right or authority they assumed to act as such commissioners and to exercise corporate powers of the said supposed park district. The

information itself set out the facts, and the proceedings taken for the organization of said district, and the election of the respondents, as such commissioners, under and by virtue of the statute entitled "An act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water," approved June 24 and in force July, 1895. (Hurd's Stat. 1897, p. 1168.) It also set forth the acts of said commission under said alleged assumed authority, among others the passing of a resolution providing for the levy of a general tax of four mills on the dollar of the assessed valuation upon all of the real estate in the district, and alleged that said commissioners purposed also to take charge of certain streets and control and maintain them as boulevards, and generally to act as such park commissioners of said pretended park district. The information set out the boundaries of said district, showing that it was wholly within the township of Evanston, in Cook county, and alleged that it was never legally organized and that said commissioners were never legally elected. The grounds alleged as showing such illegality were, that on or about April 18, 1896, other territory wholly within the same township was, in accordance with the statute before mentioned, legally organized into a park district under the name of "Ridge Avenue Park District," with commissioners duly elected, who were acting as such commissioners, and that said last named district thereby became and is still a duly organized corporation. It was further alleged that by reason of the prior organization as a corporation of said Ridge Avenue park district in said township, the attempted organization, afterward, of said North Shore park district in the same township, although no part of the latter district was included in the other, was unauthorized by said statute and was illegal, and its said pretended commissioners were without any legal authority in the premises. The respondents demurred to the information, and the court sustained the

demurrer and dismissed the petition, and this appeal was thereupon taken.

The title and the first section of the act in question are as follows:

"An act to provide for the organization of park districts and the transfer of submerged lands to those bordering on navigable bodies of water.

"Section 1. *Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That any territory situated in the same county or in two adjoining counties under township organization and so lying as to form one connected area, no portion of which shall be already included in a park district or in a township whose corporate authorities are authorized by law to levy special taxes or special assessments to maintain a public park, may be organized into a park district for the establishment, construction and maintenance of public parks and boulevards in the manner following."

The second section then provides the steps to be taken for such organization, on the petition to the county judge of one hundred legal voters resident within the proposed district. Section 23 is as follows:

"Sec. 23. When any improvement to be made by said board is local in character and confined within the limits of a township of said district, and the said board shall deem it desirable that the same should be made by special assessment it shall file a petition with the corporate authorities of the township in which the same is to be made, setting out the nature, character, locality, and description of such improvement and an estimate of the cost of the same, including labor, materials and all other expenses attending the same, and the cost of making and levying the assessment and praying that said corporate authorities levy a special assessment."

Section 24 provides that said corporate authorities shall consist of the assessor, supervisor and the clerk of said township, and prescribes their duties in levying spe-

cial assessments, if, on due examination concerning the proposed improvement, they are of the opinion such assessment should be levied. Section 25 provides that the proceedings for levying and collecting special assessments shall be the same, as nearly as practicable, as those provided in article 9 of the general Incorporation act of 1872 and amendments thereto.

It is not denied that all the steps prescribed by the statute were duly taken for the organization of the North Shore park district, including the election of the respondents as commissioners, and the only ground urged in support of the petition to oust the respondents from the office and powers they have assumed is, that after the due incorporation of the Ridge Avenue park district in the same township no other park district could, under the statute, be organized in such town. Counsel for the People in their brief say: "The proposition which we submit to this court is, that there having been a park organization created on the 18th of April, 1896, and lying wholly within the township of Evanston, called 'Ridge Avenue Park District,' there could not be a subsequent park district created under that act lying wholly within the township of Evanston, for the reason that under the act in question the corporate authorities of the town of Evanston were vested with authority to levy special assessments to maintain a public park as soon as the first park district was formed in that township, and therefore no other territory in the same township could thereafter lawfully effect a separate organization under the first section, though it might annex under section 38 of the act."

The question involves a construction of the first section. Its requirements are, that the territory to be organized into a park district must be in a county under township organization, or in two adjoining counties under township organization, and such territory must form one connected area. Then follow the restrictions in controversy, viz.: "No portion of which (territory) shall be

already included in a park district *or in a township whose corporate authorities are authorized by law to levy special taxes or special assessments to maintain a public park.*"

Counsel for respondents insist that the act does not authorize the corporate authorities of any township to levy special assessments or special taxes to *maintain* a public park, and that after the organization of the Ridge Avenue park district the corporate authorities of Evanston township were not "authorized by law to levy special taxes or special assessments to *maintain* a public park," but only to make local improvements therein, or in such district, as authorized by the act, and that therefore it was no violation of the statute to organize another park district in the township; that to *maintain* a park, and to *make local improvements* therein or in connection therewith, are two distinct things. The argument is a plausible one, but we are of the opinion that the word "maintain," as used in this section, was used in the sense of "improve," that is, the making of local improvements by special taxation or special assessments, for park purposes. To give the word "maintain" its strict meaning would render that clause of the statute meaningless, for the reason that there was not, at the time the act was passed, and has not since been, any law in this State authorizing the corporate authorities of townships to levy special taxes or special assessments to *maintain* public parks, and therefore the attempted exclusion of certain townships would be no exclusion at all, and the act would apply to all townships in the State. True, the General Assembly, by act of June 17, 1893, (Laws of 1893, p. 162,) undertook to authorize the corporate authorities having jurisdiction and control of parks and boulevards to levy a special tax upon contiguous property abutting on boulevards and pleasureways for the maintenance and repair thereof. But this act had been declared unconstitutional by this court in *Crane* v. *West Chicago Park Comrs.* 153 Ill. 348, the year before the passage of the act of 1895 under consid-

eration.   (See, also, *City of Chicago* v. *Blair*, 149 Ill. 310.)
It must be presumed that the legislature knew that there
was no such law in force, and that it had no constitu-
tional power to pass an act authorizing the corporate
authorities of towns to levy special taxes or special as-
sessments to *maintain* public parks,—using the word
"maintain" in the sense in which it is usually employed,
as contended for by counsel for respondents.

Nor can we accept the view of counsel for the People
that the clause, "or in a township whose corporate au-
thorities are authorized by law to levy special taxes
or special assessments to maintain a public park," was
intended to include those authorized by *this act* to make
such levy.   The General Assembly had previously, in
different statutes, authorized the corporate authorities of
certain townships to make such improvements by special
taxes or special assessments, upon the application of
park commissioners, and there remained a large class of
townships which had no such authority, and the purpose
of the act of 1895 was to confer on them by a general
law, subject to the conditions prescribed, a similar power,
so that park districts might be formed in such townships,
and public parks established therein and improvements
made, as had been previously provided for in only a few
townships in the State.   We are of the opinion the mean-
ing of this restrictive provision is as if it read thus:   "*No
portion of which shall be already included in a park district*,
or in a township whose corporate authorities are (now)
authorized by law," etc., or, "authorized by law hereto-
fore enacted."   It was not the intention of the legislature
to make the act applicable to those townships whose
corporate authorities had been authorized by previous
statutes to levy special taxes or special assessments for
park purposes.

But counsel for appellants say that such a construc-
tion would make the phrase, "already included in a park
district," mean included in a park district at the time

of the passage of the statute, and would not prevent the overlapping of park districts, one upon another, provided they were organized after the act took effect. We do not think so. The restrictive clause, "no portion of which (territory) shall be already included in a park district," refers to the time of the proceedings to organize the district, and if, in the proper use of language, this antecedent phrase should be understood as applying to the next clause, making it read, "no portion of which (territory) shall already be included in a township whose corporate authorities are authorized by law to levy special taxes or special assessments to maintain a public park," it would do no violence to the construction we give to the act. It would still mean this: That when it is proposed to organize a park district under this act, no territory can be included in such district which is already included in a township whose corporate authorities had power, at the time of the passage of the act,—that is, by prior acts, —to levy special taxes or special assessments to maintain a public park,—or, in other words, to make local improvements for park purposes. The act was not intended to apply to townships whose corporate authorities already had the power to levy special taxes or special assessments for park purposes, but only to townships not included in prior laws. We think the restrictive clause shows this, and it is made clearer by other provisions of the statute. Section 24 provides what officers shall constitute the corporate authorities of the township, and authorizes them, when the provisions of the statute have been complied with, to levy the special tax or special assessment for the improvement. Prior park acts applicable to certain townships contained provisions similar in character but by no means identical with these, and no intention is disclosed to interfere with the operation of such prior enactments. True, the last section of the statute in question provides that any park district organized under the act of June 19, 1893, entitled "An act to provide

for the creation of pleasure driveways and park districts,"
(Laws of 1893, p. 153,) may levy and collect special as-
sessments in the manner provided for in this act.  It is
not necessary to consider here what omission or defect,
if any, in that act was intended to be covered by the stat-
ute under consideration.  It does not appear, however,
from said section that there was any intention to make
the act apply to townships whose corporate authorities
already had power to levy special taxes or special as-
sessments for park purposes.  The act of June 19, 1893,
has a limited application, and provides for the election
of a president and six trustees, and that the board of
trustees thus constituted shall be the corporate authority
of "such pleasure driveway and park district."

We cannot construe the act as prohibiting the organi-
zation of more than one park district in one township.
We cannot suppose, in the absence of any expression
of such intention, that it was the legislative intent that
the inhabitants of a section containing one hundred legal
voters, or of a quarter section, or less, of a township,
should have the legal right to organize a park district,
and by doing so exclude the inhabitants of the other
thirty-five sections, more or less, from forming like or-
ganizations.  Section 38 would not, as supposed, afford
them similar facilities.  It provides only for the annex-
ation of adjoining territory to existing districts.  It is
doubtless true, as contended by counsel, that the multi-
plication of boards and taxing agencies of all kinds is a
great burden upon the tax-payer and an evil that should
be corrected, but such a consideration cannot be allowed
to defeat the operation of a statute by judicial construc-
tion.  It would not have been difficult, had such been the
purpose, to provide that there should be only one park
district and one set of commissioners in any one township.

We are of the opinion the case was correctly decided
by the court below, and the judgment will be affirmed.

*Judgment affirmed.*